NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-13347

BOSTON FIREFIGHTERS UNION, LOCAL 718, INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, AFL-CIO, & others[1]  vs.  CITY OF BOSTON & another.[2]


Suffolk.     January 6, 2023. - March 30, 2023.

Present:  Budd, C.J., Gaziano, Lowy, Cypher, Kafker, Wendlandt, & Georges, JJ.


Injunction.  Practice, Civil, Preliminary injunction, Injunctive relief.  Labor, Collective bargaining, Public employment, Police, Fire fighters.  Municipal Corporations, Collective bargaining, Mayor, Police, Fire department.  Public Employment, Collective bargaining.



Civil action commenced in the Superior Court Department on January 3, 2022.

A motion for a preliminary injunction was heard by Jeffrey A. Locke, J.

A proceeding for interlocutory review was heard in the Appeals Court by Sabita Singh, J.  The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.


John Foskett for the defendants.

---

[1] Boston Police Superior Officers Federation and Boston Police Detectives Benevolent Society.

[2] Mayor of Boston.

Patrick N. Bryant for Boston Police Superior Officers Federation.

Leah M. Barrault for Boston Firefighters Union, Local 718, International Association of Fire Fighters, AFL-CIO.

Scott W. Dunlap, for Boston Police Detectives Benevolent Society, was present but did not argue.

The following submitted briefs for amici curiae:

Larry H. James, of Ohio, & Joseph G. Donnellan for National Fraternal Order of Police.

John M. Becker & Ian M. Collins for Massachusetts Coalition of Police.

Matthew D. Watts for International Association of Fire Fighters.

CYPHER, J.  The plaintiffs, the Boston Firefighters Union, Local 718, International Association of Fire Fighters, AFL-CIO (Local 718); the Boston Police Detectives Benevolent Society (BPDBS); and the Boston Police Superior Officers Federation (federation), filed a verified complaint in the Superior Court, challenging the defendants' unilateral amendment of the COVID-19 vaccination policy for all city of Boston (city) employees.  In the complaint, the plaintiffs sought declaratory and injunctive relief for the defendants' alleged violations of both the prior memoranda of agreement between the parties, and the defendants' collective bargaining obligations as public employers, pursuant to G. L. c. 150E.  The plaintiffs' motion for injunctive relief was denied by a judge of the Superior Court.  The plaintiffs appealed, pursuant to G. L. c. 231, § 118, to a single justice of the Appeals Court, who reversed the judge's denial of the plaintiffs' motion for a preliminary injunction and ordered the

entry of a preliminary injunction restraining the defendants from enforcing their December 2021 amended COVID-19 vaccination policy. The defendants appealed from the order of the single justice to this court. This case now presents the question whether the single justice of the Appeals Court abused her discretion in reversing the denial of the plaintiffs' motion for a preliminary injunction. For the reasons stated below, we conclude that the single justice abused her discretion in enjoining the defendants from enforcing their December 2021 amended COVID-19 vaccination policy, and we reverse the order of the single justice of the Appeals Court and vacate the injunction.[3]

Background. Each of the three plaintiffs is an employee organization within the meaning of G. L. c. 150E, § 1, serving as the exclusive bargaining representative for various police officers and firefighters employed by the defendants, the city and Michelle Wu, in her official capacity as mayor of the city.[4] The federation is the exclusive bargaining representative of 250 sworn sergeants, lieutenants, and captains of the Boston police

---

[3] We acknowledge the amicus briefs submitted by the National Fraternal Order of Police, the Massachusetts Coalition of Police, and the International Association of Fire Fighters in support of the plaintiffs.

[4] The defendants are public employers within the meaning of G. L. c. 150E, § 1.

department (BPD).  BPDBS serves as the exclusive bargaining representative of all BPD patrol detectives, detective superiors, and those assigned to the forensic unit within BPD. Local 718 is the exclusive bargaining representative for all uniformed employees of the city's fire department.

On March 10, 2020, the Governor declared a state of emergency in response to the spread of COVID-19.  Christie v. Commonwealth, 484 Mass. 397, 398 (2020).  The next day, COVID-19 was declared a global pandemic by the World Health Organization (WHO).  Id. at 398-399.  To date, according to the WHO, COVID-19 remains a pandemic, and continues to be "a dangerous infectious disease with the capacity to cause substantial damage to health and health systems."  See World Health Organization, Statement on the fourteenth meeting of the International Health Regulations (2005) Emergency Committee regarding the coronavirus disease (COVID-19) pandemic (Jan. 30, 2023), https://www.who.int /news/item/30-01-2023-statement-on-the-fourteenth-meeting-of- the-international-health-regulations-(2005)-emergency-committee- regarding-the-coronavirus-disease-(covid-19)-pandemic [https://perma.cc/3YL8-8FAN].  Vaccination against COVID-19, however, has served as an important tool in achieving higher levels of immunity among the population as the pandemic continues, see id., because individuals who are vaccinated

against COVID-19 are significantly less likely to develop serious health complications from COVID-19.

On August 12, 2021, in an effort to combat the spread of COVID-19, the defendants announced the "Vaccine Verification or Required Testing for COVID-19 Policy" (COVID-19 policy), generally requiring all city employees either to verify they are vaccinated against COVID-19, or, alternatively, to submit proof of a negative COVID-19 test every seven days.  The city executed a memorandum of agreement (MOA) with both the federation and Local 718 memorializing this policy.[5]

Throughout the lifespan of the pandemic, however, COVID-19 has continued to evolve genetically, giving rise to numerous variants of concern.  Among the COVID-19 variants of concern was the Omicron variant during the fall and winter of 2021. According to Dr. Bisola Ojikutu, the executive director of the city's public health commission, the Omicron variant likely was to spread so significantly and rapidly that the continued practice of allowing employees to go through weekly testing, as an alternative to vaccination, was insufficient to combat the spread of COVID-19.

---

[5] At the time of the MOA with the federation and Local 718, the city also was involved in negotiations with BPDBS.

Thus, on December 20, 2021, Mayor Wu unilaterally amended the COVID-19 policy for the city's employees, to mandate that all city employees be vaccinated against COVID-19 as a condition of employment (amended COVID-19 policy).[6] The failure to verify one's vaccination status resulted in discipline for city employees, beginning with unpaid leave from employment, and ultimately progressing to termination for those employees who refused to comply with the new amended COVID-19 policy. The amended policy required unvaccinated city employees to verify that they had received at least one dose of the COVID-19 vaccine by January 15, 2022, and verify full vaccination status by February 15, 2022.[7]

Each plaintiff objected to the defendants' unilateral amendment of the COVID-19 policy. Local 718 contacted Mayor Wu, asking her to consider a continuation of the in-station testing program under the previous COVID-19 policy; its efforts were unsuccessful. The federation demanded the defendants adhere to the existing MOA and met with the defendants to discuss the defendants' bargaining obligations related to the vaccination

---

[6] The defendants notified the plaintiffs of the policy change in the days prior to December 20, 2021, when Mayor Wu unilaterally amended the policy.

[7] The defendants extended the effective date of the policy by two weeks.

policy.  Finally, BPDBS requested that the defendants refrain both from implementing the amended COVID-19 policy and from making further unilateral changes to the COVID-19 policy.

When Mayor Wu declined to acquiesce to the plaintiffs' requests, after the unilateral implementation of the amended COVID-19 policy, the plaintiffs filed prohibited practice charges with the Department of Labor Relations, alleging that the defendants violated G. L. c. 150E, § 10 (a) (1), (5).[8]  The federation also filed a grievance, alleging that the amended vaccination policy violated the MOA with the city.  Most importantly for the purposes of this appeal, the plaintiffs also filed a verified complaint in the Superior Court seeking both declaratory and injunctive relief as a result of the defendants' unilateral amendment of the COVID-19 policy.  The plaintiffs alleged that the defendants' actions repudiated the MOAs and

---

[8] All but one of the allegations in these charges were dismissed by a Department of Labor Relations investigator.  See City of Boston & Boston Police Superior Officers Fed'n, Commonwealth Employment Relations Bd. (CERB), Nos. MUP-21-9008, MUP-22-9238, at 1 & n.1 (Dec. 29, 2022).  The plaintiffs timely requested review of the dismissals by CERB.  Id. at 1 n.1, 2. CERB recently affirmed the dismissal of the repudiation and decision bargaining allegations but remanded the matters on a limited issue concerning the defendants' alleged violation of their impact bargaining obligations.  See id.  See also City of Boston & Boston Police Detective Benevolent Soc'y, CERB, No. MUP-21-9004, at 2 (Dec. 29, 2022); City of Boston & Boston Firefighters, IAFF Local 718, CERB, Nos. MUP-21-9002, MUP-22-9310, at 2 (Dec. 29, 2022).

violated the bargaining obligations of G. L. c. 150E.[9]  Following
a hearing on the plaintiffs' motion for a preliminary
injunction, the judge denied their request for injunctive
relief.  The plaintiffs filed a petition pursuant to G. L.
c. 231, § 118, for a single justice of the Appeals Court to
review the denial of their motion for a preliminary injunction.

In her decision, the single justice reversed the denial of
the plaintiffs' motion for a preliminary injunction and enjoined
the defendants from implementing the amended COVID-19 policy,
pending a final resolution of the matter.  The single justice
held that the defendants' failure to bargain on the decision to
implement the amended COVID-19 policy, prior to its
implementation, was sufficient for the plaintiffs to have
demonstrated a likelihood of success on the merits of the case.

---

[9] The parties dispute whether the defendants fulfilled their
bargaining obligations after the announcement of the amended
COVID-19 policy.  The defendants met separately with the
plaintiffs' bargaining teams on January 5, 6, and 7, 2022,
before the Department of Labor Relations mediation hearing that
was scheduled on January 11, 2022, for the plaintiffs'
prohibited practice charges.  The plaintiffs take issue with the
fact that this was more than three weeks after the amended
COVID-19 policy was announced, and only one week before the
initial deadline for employees to comply with the amended COVID-
19 policy's first dose requirement.  At the hearing for a
preliminary injunction, the plaintiffs reported that the city
only agreed to one hour of mediation at the January 11 mediation
session and sent a representative with no decision-making
authority.

Moreover, the single justice disagreed with the motion judge that the plaintiffs failed to demonstrate irreparable harm.

The single justice recognized that potential termination from employment generally does not satisfy the element of irreparable harm.  See Sampson v. Murray, 415 U.S. 61, 91-92 (1974).  See also Hull Mun. Lighting Plant v. Massachusetts Mun. Wholesale Elec. Co., 399 Mass. 640, 643 (1987) (economic loss alone generally insufficient for irreparable harm).  However, where the plaintiffs alleged that the COVID-19 vaccine involved issues of bodily integrity and self-determination, the single justice held that this case was distinguishable from the more common case where an employee seeks to enjoin termination from employment.  Furthermore, where there were only 450 remaining unvaccinated union members, who could continue to be tested regularly under the existing policy, the enjoinment of the amended COVID-19 policy still would provide the defendants with the ability to effect public health measures to minimize the spread of COVID-19.  Thus, the single justice held that the balance of harms favored the plaintiffs.[10]

---

[10] The order enjoins the defendants from enacting their amended COVID-19 policy only as to employees represented by the plaintiff unions.  However, the defendants have represented to this court that the policy has been suspended for all city employees pending the final resolution of this matter.

The defendants appealed from the order of the single justice, and we transferred the case to this court sua sponte.

Discussion. 1. Standard of review. Where a single justice of the Appeals Court reverses the decision of a motion judge, and issues a preliminary injunction following a petition pursuant to G. L. c. 231, § 118, we review the single justice's decision to issue the injunction for an abuse of discretion, as if it were an identical order by the motion judge considering the matter in the first instance.[11] See Aspinall v. Philip Morris Cos., 442 Mass. 381, 389-390 (2004), citing Jet-Line Servs., Inc. v. Selectmen of Stoughton, 25 Mass. App. Ct. 645, 646 (1988). See also King v. Shank, 92 Mass. App. Ct. 837, 839 n.3, S.C., 480 Mass. 7 (2018) (reviewing single justice's order

---

[11] In her order, the single justice stated that her review of the motion judge's denial of the motion for injunctive relief was for an abuse of discretion. Her order does not reflect review for an abuse of discretion; instead, the single justice's decision more closely reflects de novo review. The single justice had the right to review the denial of the preliminary injunction de novo, as she could review the same factors as the motion judge, see Lieber v. President & Fellows of Harvard College (No. 2), 488 Mass. 816, 821 (2022), and draw her own conclusions from the record, where the motion judge's order "was predicated solely on documentary evidence," Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616 (1980). See Manfrates v. Lawrence Plaza Ltd. Partnership, 41 Mass. App. Ct. 409, 412 n.4 (1996) (single justice may review order concerning preliminary injunction de novo). Whether the single justice reviewed the motion judge's denial of injunctive relief for an abuse of discretion, or de novo, does not alter our holding because, for the reasons discussed infra, the issuance of the preliminary injunction was erroneous.

to issue preliminary injunction "in the same manner as if it were an identical order by the trial judge considering the matter in the first instance). Cf. Fordyce v. Hanover, 457 Mass. 248, 256 (2010) (where single justice vacates motion judge's decision to issue preliminary injunction, pursuant to G. L. c. 231, § 118, appellate court reviews for whether motion judge abused discretion in issuing preliminary injunction). In making this determination, "we decide 'whether the judge applied proper legal standards and whether there was reasonable support for his [or her] evaluation of factual questions.'" Id., quoting Commonwealth v. Fremont Inv. & Loan, 452 Mass. 733, 741 (2008). Any such conclusions of law, however, "are subject to broad review and will be reversed if incorrect." Fordyce, supra, quoting Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616 (1980).

"[A] party seeking a preliminary injunction must show '(1) a likelihood of success on the merits; (2) that irreparable harm will result from denial of the injunction; and (3) that, in light of the [moving party's] likelihood of success on the merits, the risk of irreparable harm to the [moving party] outweighs the potential harm to the [nonmoving party] in granting the injunction.'" Garcia v. Department of Hous. & Community Dev., 480 Mass. 736, 747 (2018), quoting Loyal Order of Moose, Inc., Yarmouth Lodge # 2270 v. Board of Health of

Yarmouth, 439 Mass. 597, 601 (2003). "Where a party seeks to enjoin government action, the judge also must determine that the requested order promotes the public interest, or, alternatively, that the equitable relief will not adversely affect the public." Foster v. Commissioner of Correction, 488 Mass. 643, 650 (2021), quoting Garcia, supra.

2. Decision bargaining. The city and the mayor argue that the single justice abused her discretion in holding that the plaintiffs had established a likelihood of success on the merits of their claim, i.e., that the amended COVID-19 policy violated the defendants' mandatory decision bargaining obligations and prior MOAs between the parties. We agree.

"Pursuant to G. L. c. 150E, § 6, public employers must negotiate in good faith with respect to wages, hours, standards or productivity and performance, and any other terms and conditions of employment" (quotation omitted). Worcester v. Labor Relations Comm'n, 438 Mass. 177, 180 (2002). The single justice held that the plaintiffs' claim revolves around the city's duty to bargain over the vaccine mandate policy. Where it failed to bargain over the decision to amend the COVID-19 policy to eliminate the testing alternative to vaccination and require vaccination against COVID-19 as a condition of employment, the single justice held that the plaintiffs have established a strong likelihood of success on their essential

claim, i.e., that the defendants likely violated both their decision and impact bargaining obligations under G. L. c. 150E, as well as the MOAs with Local 718 and the federation.

Contrary to the decision of the single justice, the defendants need not have bargained over the decision to amend the COVID-19 policy to remove COVID-19 testing as an alternative to vaccination. Certain managerial decisions are exempted from collective bargaining obligations where such decisions, as a matter of public policy, must be reserved to the public employer's discretion. Worcester, 438 Mass. at 180. "The crucial factor in determining whether a given issue is a mandatory subject of bargaining is whether resolution of the issue at the bargaining table is deemed to conflict with perceived requirements of public policy" (alteration and citation omitted). Id. at 181. Such inquiry aims to define "the boundary between subjects that by statute, by tradition, or by common sense must be reserved to the sole discretion of the public employer so as to preserve the intended role of the governmental agency and its accountability in the political process." Id., quoting Lynn v. Labor Relations Comm'n, 43 Mass. App. Ct. 172, 178 (1997). See Local 346, Int'l Bhd. of Police Officers v. Labor Relations Comm'n, 391 Mass. 429, 437 (1984) ("in instances where a negotiation requirement would unduly impinge on a public employer's freedom to perform its public

functions, G. L. c. 150E, § 6, does not mandate bargaining over a decision directly affecting the employment relationship").

In December 2021, as the Omicron variant ran rampant throughout the Commonwealth, vaccination against COVID-19 was viewed as the only effective means by which the city and the mayor could combat the virus while still performing their public functions. According to the executive director of the city's public health commission, the continued practice of testing as an alternative to vaccination against COVID-19 would be insufficient to contain the spread of COVID-19 following the emergence of the Omicron variant. The defendants' policy decision to amend the COVID-19 policy was based on concerns not only for the health of their employees, but also for the residents of the city, for whom the defendants were obligated to provide continued access to public safety services.

Given the unique circumstances of the COVID-19 pandemic and its threat to the health and safety of the public, the decision to remove the testing alternative in the defendants' COVID-19 policy constituted a nondelegable policy decision that could not be the subject of decision bargaining because any such requirement would have impinged directly on the defendants' ability to provide essential public safety services to city residents. See Boston v. Boston Police Superior Officers Fed'n, 29 Mass. App. Ct. 907, 908 (1990) (certain core managerial

decisions, affecting city's ability to provide essential safety services, exceed bounds of mandatory bargaining because "[t]he demands of public safety and a disciplined police force underscore the importance of management control over matters such as staffing levels, assignments, uniforms, weapons, and definition of duties" [citation omitted]).  See also Local 346, Int'l Bhd. of Police Officers, 391 Mass. at 439-440 (police chief may require officers suspected of criminal conduct to take polygraph examination without mandatory bargaining because integrity and credibility of police departments is indispensable to effective public law enforcement); Framingham v. Framingham Police Officers Union, 93 Mass. App. Ct. 537, 543 (2018) (police chief's authority to assign officers to particular duties concerns public safety and constitutes policy judgment in allocation and deployment of law enforcement resources); Saugus v. Saugus Police Superior Officers Union, 64 Mass. App. Ct. 916, 916-917 (2005) (police chief's involuntary assignment of officers to overtime shifts, which were required for public safety, was within his core managerial prerogatives and was not subject to mandatory bargaining).

Whether there were possible alternatives to the amended COVID-19 policy that could have allowed the defendants to maintain the ability to provide these essential safety services to city residents without going so far as mandating vaccination

against COVID-19 for all city employees, such as continued testing for COVID-19 for unvaccinated employees, is not the issue when identifying core managerial prerogatives. See Worcester, 438 Mass. at 183 ("A public employer need not defend the wisdom of a policy choice that it has made in order to have that choice recognized as a core managerial prerogative. It is the fact that the public employer's choice is one of policy, not the merits of the choice the employer makes, that renders the choice an inappropriate subject of mandatory bargaining"). Where the decision to remove weekly testing as an alternative to vaccination against COVID-19 constituted a core managerial prerogative, we hold that the plaintiffs failed to demonstrate a likelihood of success on the merits of their claim that the defendants have violated their decision bargaining obligations under G. L. c. 150E.

Notwithstanding the defendants' bargaining obligations under G. L. c. 150E, the plaintiffs alleged that the defendants' unilateral decision to remove the testing alternative to vaccination against COVID-19 repudiated the MOAs between the parties.[12] In arguing that the defendants have repudiated the MOAs, the plaintiffs point to paragraph seven of the MOA with

---

[12] Only two of the unions, Local 718 and the federation, actually entered into an MOA with the defendants to memorialize the COVID-19 policy.

Local 718, where the defendants stated their intent "to periodically review the Policy" and agreed to "fulfill any impact bargaining obligations associated with any proposed substantive changes" (emphasis added). The plaintiffs also alleged that the defendants violated paragraph four of the MOA with the federation, where the defendants agreed that nothing in the MOA concerning the COVID-19 policy shall "demonstrate a practice or create a precedent for any other matter" or diminish any of the parties' other collective bargaining rights.

Neither paragraph in the MOAs contains express language demonstrating an agreement between the parties as to mandatory collective bargaining on any potential future decision to require mandatory vaccination against COVID-19. Furthermore, any agreement to mandatory collective bargaining on an issue of public health and safety, in light of the emergency of the Omicron variant of COVID-19, likely would not have been enforceable as the defendants are "not free to bargain away certain elements of [their] nondelegable authority and responsibility to act for the public health, safety, and welfare," because "the public interest . . . impose[s] a necessary limitation upon the collective bargaining process." Chief Justice for Admin. & Mgt. of the Trial Court v. Commonwealth Employment Relations Bd., 79 Mass. App. Ct. 374, 381 (2011). Thus, we hold that the plaintiffs have failed to

demonstrate a likelihood of success on the merits of their claim that the defendants have repudiated the MOAs, insofar as the MOAs require mandatory collective bargaining on any decision to eliminate the testing alternative in the amended COVID-19 policy.

3. Impact bargaining. Even where an employer's decision is not the subject of mandatory collective bargaining, if any such decision by the employer "has [an] impact upon or affects a mandatory topic of bargaining, negotiation over the impact is [still] required" (citation omitted). Worcester, 438 Mass. at 185. In seeking injunctive relief from the implementation of the amended COVID-19 policy, the plaintiffs alleged that they have demonstrated a likelihood of success on the merits of the defendants' alleged violations of their impact bargaining obligations under both the MOAs and G. L. c. 150E.[13]

Exigent circumstances permit an employer to set a deadline for concluding impact bargaining and implementing a change in the conditions of employment, so long as the employer continues to bargain over the impacts of such change thereafter.[14] See

_____

[13] Paragraph seven of the MOA between the defendants and Local 718 states: "The City . . . shall fulfill any impact bargaining obligations associated with any proposed substantive changes."

[14] The parties agree that an exigency defense exists for an employer with respect to impact bargaining obligations. We note

City of Boston & Boston Police Superior Officers Fed'n, Commonwealth Employment Relations Board (CERB), Nos. MUP-21-9008, MUP-22-9238, at 14 (Dec. 29, 2022). An employer relying on an exigency defense for impact bargaining has the burden of establishing that (1) circumstances beyond the employer's control require the imposition of a deadline for negotiations; (2) the bargaining representative of the union was notified of these circumstances and the employer's deadline; and (3) the deadline was reasonable and necessary. Id. See Secretary of Admin. & Fin. v. Commonwealth Employment Relations Bd., 74 Mass. App. Ct. 91, 98 (2009) ("If the Commonwealth had agreed to bargain and no resolution or impasse was in sight as the implementation deadline approached, under longstanding commission precedent, the Commonwealth could have imposed a reasonable negotiation deadline, implemented the withholding, and continued post-implementation bargaining without running afoul of its obligations under G. L. c. 150E").

---

that CERB precedent has acknowledged such a defense, and while we discern no published appellate court case of this Commonwealth directly on point on the issue, the parties rely on this CERB precedent in their briefs. See City of New Bedford, 38 M.L.C. 239, 251 (2012). This precedent also has been relied on by the Appeals Court, albeit in an unpublished decision. See New Bedford v. Commonwealth Employment Relations Bd., 90 Mass. App. Ct. 1103 (2016). We owe deference to the special expertise of CERB in this area of law. See Somerville v. Commonwealth Employment Relations Bd., 470 Mass. 563, 567-568 (2015).

Here, according to Dr. Ojikutu, the emergence of the Omicron variant presented a circumstance outside of the defendants' control, which threatened the defendants' ability to continue to provide essential public safety services to city residents. Testing, as an alternative to mandatory vaccination for city employees, was no longer considered to be a viable alternative by medical officials like Dr. Ojikutu. In light of the evolving circumstances with the Omicron variant, and the belief that testing was no longer a viable alternative to vaccination against COVID-19, the defendants notified the plaintiffs of their intent to amend the COVID-19 policy, mandating vaccination against COVID-19 for all city employees. Per the amended COVID-19 policy, all city employees were required to have at least one dose of the COVID-19 vaccine by January 15, 2022, and verify full vaccination status by February 15, 2022. This deadline initially was extended by two weeks, and the defendants suspended the implementation of the policy pending the resolution of this matter. See note 10, supra.

The plaintiffs argue that where the deadline for mandatory vaccination was pushed back multiple times, the implementation of the amended COVID-19 policy was stayed pending resolution of this matter, and the city permitted thousands of other unvaccinated employees to continue to provide services to its residents, no such exigent circumstances existed to relieve the

defendants of their impact bargaining obligations.  Because the Omicron variant of COVID-19 was thought to spread significantly and rapidly throughout the city's workforce, however, the defendants' claim, that the exigency of the COVID-19 pandemic necessitated the swift removal of the testing alternative to mandatory vaccination against COVID-19, was reasonable given the expert opinions of medical officials such as Dr. Ojikutu.

Whether the initial, approximate three-week deadline imposed by the defendants was a reasonable and necessary deadline in light of the emergence of the Omicron variant is less clear.  The record is devoid of sufficient facts to determine this fact-intensive issue, one that has already been presented to CERB.  See City of Boston & Boston Police Superior Officers Fed'n, CERB, Nos. MUP-21-9008, MUP-22-9238, at 14-15. While CERB has yet to denounce the approximate three-week deadline as an unreasonable deadline, it did acknowledge that the defendants' deadline was less than one-half of a comparable two-month deadline imposed by the Commonwealth in nearly identical circumstances, in a dispute over mandatory vaccination against COVID-19 between the Commonwealth and the State Police Association of Massachusetts.  Id.

Whether the deadline for compliance with the defendants' amended COVID-19 policy in fact was reasonable and necessary is still the subject of a pending matter before an investigator of

the Department of Labor Relations, following a remand by CERB. Id. at 14-15 & n.10. Nonetheless, given CERB's acknowledgement that the defendants' initial deadline more than halved that of another employer in similar circumstances, we conclude that the plaintiffs have demonstrated at least some likelihood of success on the merits of their impact bargaining claim.

4. Irreparable harm and the harm to the public. Assuming that the plaintiffs have demonstrated a likelihood of success on the merits of their impact bargaining claim, i.e., that the initial deadline for implementation of the amended COVID-19 policy in fact was neither a reasonable nor a necessary deadline in the circumstances, the plaintiffs still were required to demonstrate irreparable harm from the failure to enjoin the implementation of the amended COVID-19 policy. See Garcia, 480 Mass. at 747.

The motion judge and single justice disagreed on whether the plaintiffs had demonstrated irreparable harm. The motion judge held that, where the failure to grant the injunction would result in solely economic harm in the form of adverse employment consequences including suspension without pay and eventual termination, the plaintiffs have not demonstrated irreparable harm. See Sampson, 415 U.S. at 92 n.68 (generally termination from employment falls short of irreparable harm). See also Hull Mun. Lighting Plant, 399 Mass. at 643 (economic damages alone

insufficient for irreparable harm).  The single justice, however, held that while potential termination from employment ordinarily does not give rise to irreparable harm, the circumstances of the COVID-19 pandemic and the mandate of vaccination against COVID-19 as a condition of employment constituted a "genuinely extraordinary situation," implicating issues of "bodily integrity and self-determination."  Thus, according to the single justice, the plaintiffs sufficiently had demonstrated irreparable harm warranting injunctive relief.

While the circumstances giving rise to the threat of discharge from employment were extraordinary, i.e., the COVID-19 pandemic and mandatory vaccination against COVID-19, we conclude that the motion judge, and not the single justice, was correct: the harm to the plaintiffs -- the loss of employment -- is still economic, see Hull Mun. Lighting Plant, 399 Mass. at 643, as they could have continued to refuse to become vaccinated and instead challenged the decision both in court and before CERB, see Commonwealth v. Mass. CRINC, 392 Mass. 79, 87 (1984) (irreparable harm must rise to level such that no adequate remedy at law exists).  See also G. L. c. 150E, § 11 (d) (where employer commits prohibited practice under public employee collective bargaining agreement, discharged employee shall be reinstated with potential for back pay); Pittsfield v. Local 447 Int'l Bhd. of Police Officers, 480 Mass. 634, 644 (2018)

(officers wrongfully terminated have possibility of reinstatement and can be made whole through back pay and compensation for lost income from overtime, lost benefits under collective bargaining agreement, etc.).

We must also consider the potential harm to the city and the public in granting an injunction. Garcia, 480 Mass. at 747. The risk of irreparable harm to the plaintiffs must outweigh this potential harm to the city and the public. Id. Where the plaintiffs seek to enjoin government action, the award of a preliminary injunction must "promote[] the public interest, or, alternatively, . . . [must] not adversely affect the public" (citation omitted). Id.

As explained by Dr. Ojikutu, health officials at the time had a scientific basis to believe that continuing to allow testing as an alternative to vaccination against COVID-19 likely was insufficient to combat the surge of the Omicron variant in December 2021. Dr. Ojikutu opined that requiring vaccination against COVID-19 instead of the testing alternative would reduce the likelihood of the spread of COVID-19 to those city residents who need emergency public safety services. In doing so, vaccination against COVID-19 not only protected the health of city residents, but also protected the defendants' ability to continue to maintain a sufficiently healthy workforce during the Omicron surge, as would be needed to deliver emergency public

safety services to the residents of the city.  Therefore, where awarding injunctive relief does not promote the public interest, the single justice abused her discretion in issuing the preliminary injunction because the potential harm to the city and the public resulting from the spread of COVID-19 clearly outweighed the economic harm to the employees.  See LeClair v. Norwell, 430 Mass. 328, 337-339 (1999) (where enjoining important school construction project would harm public interest, no error in failure to award preliminary injunction despite plaintiffs' meritorious allegations that town violated public construction statute and town bylaw).

Conclusion.  Accordingly, we reverse the order of the single justice of the Appeals Court, and we vacate the preliminary injunction enjoining the defendants from enacting the amended COVID-19 policy.

So ordered.